UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ENRIQUE RODRIGUEZ, on behalf of himself and others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> FORD MOTOR COMPANY, <br><br> Defendant. | No. 21 C 2553 <br><br> Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Enrique Rodriguez brought this putative class action claim against Ford Motor Company, asserting a claim under the Illinois Consumer Fraud Act ("ICFA"), as well as claims for breach of implied warranty of merchantability and fraudulent omission. Currently before the Court is Ford's motion to dismiss for failure to state a claim, R. 11. That motion is granted.

**Background**

This case arises out of an alleged defect in the trunk lid wiring harness of the 2015-2017 Ford Mustang vehicles ("the vehicles"). Rodriguez purchased a 2015 Ford Mustang EcoBoost from Hopkins Ford of Elgin, an authorized Ford dealership in Elgin, Illinois. Rodriguez alleges that in November 2019, the trunk wiring defect caused his backup camera to malfunction. According to Rodriguez, the defect causes "intermittent backup camera malfunction and failure." R. 1 at 3. The backup camera

malfunction—which occurred regularly after November 2019—caused Rodriguez concern about the safety of his vehicle.

Rodriguez filed a complaint on May 5, 2021, alleging he would not have purchased the vehicle had Ford disclosed the defect, which it had a duty to do. He alleges Ford breached its implied warranty of merchantability, violated the ICFA, and fraudulently omitted the nature of the defect from consumers. Ford filed its motion to dismiss on July 13, 2021, arguing Rodriguez has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## Legal Standard

A Rule 12(b)(6) motion challenges "the sufficiency of the complaint." *Berger v. Nat'l Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

2

liable for the misconduct alleged." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Analysis

Rodriguez alleges Ford breached its implied warranty of merchantability when it sold vehicles it knew were not merchantable at the time of sale and that he suffered damage in the form of a less safe, less valuable car than he anticipated owning. He then alleges Ford violated the ICFA when it failed to disclose the wiring harness defect and that he would not have purchased the car had he known about it. Finally, he alleges Ford fraudulently omitted or concealed the defect even though it had a duty to disclose it to Rodriguez and the putative class. Ford argues Rodriguez has not sufficiently stated a claim for any of his counts.

### I.  Count I: Breach of Implied Warranty

To state a claim for breach of the implied warranty of merchantability in Illinois, a plaintiff must allege that "(1) the defendant sold goods that were not merchantable at the time of sale; (2) the plaintiff suffered damages as a result of the defective goods; and (3) the plaintiff gave the defendant notice of the defect." *Indus. Hard Chrome, Ltd., v. Hetran, Inc.*, 64 F. Supp. 2d 741, 748 (N.D. Ill. 1999) (citing 810 ILCS 5/2-314). Additionally, "privity of contract is a prerequisite to recover economic damages for breach of implied warranty." *Woelker v. Porsche Cars N. Am.*,

3

*Inc.*, 353 F.3d 516, 525 (7th Cir. 2003) (citing *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029-30 (Ill. 1998)).

Ford argues Rodriguez has failed to provide pre-suit notice to Ford and failed to plead that he was in privity with Ford. Rodriguez argues he satisfied the direct-dealing exception to the privity rule, and that Ford's actual knowledge of the defect prior to the lawsuit negates the need for pre-suit notice.

### A. Pre-Suit Notice

A plaintiff pursuing a breach of warranty claim must give the seller notice of the claimed breach or be barred from recovery. U.C.C. 2-607. This notice requirement is intended to encourage pre-suit settlement negotiations. *Id.* at cmt. 4; *Reyes v. McDonald's Corp.*, 2006 WL 3252579, at *3 (N.D. Ill. Nov. 8, 2006). Notice is subject to two exceptions and is not required when: (1) the seller has actual knowledge of the defect of the particular product; or (2) a consumer plaintiff suffers a personal injury, in which case the notice requirement could be satisfied by filing a lawsuit. *Allstate Ins. Co. v. Daimler Chrysler*, 2004 WL 442679, *2 (N.D. Ill. Mar. 9, 2004) (citing *Connick v. Suzuki Motor Co. Ltd.*, 174 Ill.2d 482, 492 (1996)).

Rodriguez has not suffered any injury, so the filing of this lawsuit does not free him of the pre-suit notice requirement. Instead, he alleges that pre-suit notice was not required because Ford had actual knowledge of the defect through its "ten years" of testing door use in "tens of thousands of load cycles," and because Ford received numerous negative consumer reviews regarding the back-up camera malfunctioning. R. 23 at 8.

4

First, Rodriguez's argument that Ford should have known of the defect because it tested the product line and became aware of the trunk-wiring issue in its line of vehicles is too general to satisfy the exception. Rodriguez needs to allege Ford was "somehow apprised of the trouble with the particular product purchased by a particular buyer." *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 717 (N.D. Ill. 2020) (rejecting the argument that notice was not required because the plaintiff alleged Ford had actual knowledge of the defect in the product line). In making his argument that knowledge of the defect in the product line is sufficient, Rodriguez relies on *Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, 564 F. Supp. 2d 833 (N.D. Ill. 2008) and *Hedges v. Earth, Inc.*, 2015 WL 1843029 (N.D. Ill. Apr. 21, 2015). The courts in both of these cases held that pre-suit notice was not required where defendants had knowledge of defects in entire product lines. *See Stella*, 564 F. Supp. 3d at 837; *Hedges*, 2015 WL 1843029, at *7. But numerous courts have declined to follow these decisions, finding them either inconsistent with or completely contrary to Illinois law.

In *Block v. Lifeway Foods, Inc.*, 2017 WL 3895565 (N.D. Ill. Sept. 6, 2017), a district court found the defendant did not have actual knowledge of a product defect where it conducted a study that revealed its product contained 4% lactose and it had been advertising that its product was "99% lactose free." *Block*, 2017 WL 3895565 at *6. The court held that the plaintiff needed to allege more than "simply [the defendant] was generally aware of problems with the particular product line," and explained, respectfully, that "[*Stella*] runs contrary to the principles outlined in

5

[*Connick*]," which require a defendant to have had knowledge of the defect in the particular product and as to the particular plaintiff. *Id.*; *see also Muir v. NBTY, Inc.*, 2016 WL 5234596, at *9 (N.D. Ill. Sept. 22, 2016) (declining to follow *Stella* as contrary to Illinois law). This Court agrees with the *Block* and *Muir* courts—Illinois law requires more than Rodriguez's general allegations that Ford had knowledge of the defect in the vehicle product line.

Second, Rodriguez's argument that other consumers have complained about the defect to Ford is similar to the argument the court rejected in *O'Connor*. There, the plaintiff argued the actual knowledge exception to the pre-suit notice requirement was satisfied because, by the time plaintiff leased his vehicle from an authorized Ford dealership, many other consumers had complained of the same issues and the defendant had already issued bulletins acknowledging the complaints. *O'Connor*, 477 F. Supp. 3d at 715. The court found such allegations were insufficient, explaining the Illinois Supreme Court had expressly rejected that theory of notice in *Connick*. *Id.* at 715-16 (citing *Connick*, 675 N.E.2d at 588 ("[The defendant's] generalized knowledge about the safety concerns of third parties is insufficient to fulfill plaintiff's UCC notice requirement.")). The same is true here. The fact that Ford had knowledge of the complaints of others (assuming for the sake of the motion to dismiss that Ford did in fact know of the complaints), is not sufficient to evade the notice requirement.

Because Rodriguez does not allege more than Ford's general knowledge of a defect in the vehicle product line, he is not exempt from the pre-suit notice requirement. And because he did not provide Ford with pre-suit notice, he has not

6

sufficiently stated a claim for breach of implied warranty of merchantability. The motion to dismiss Count I is granted.

### B. Privity

Because the Court is granting Ford's motion to dismiss the breach of implied warranty claim based on lack of pre-suit notice, it is unnecessary to consider Ford's argument that Rodriguez's claim also fails for lack of privity. *See Block*, 2017 WL 3895565, at *7. However, even if the Court were to find pre-suit notice (or an exception to it) was established, Rodriguez has failed to establish privity.

There is no contractual privity between a manufacturer and a person who buys from an independent dealer. *Kowalke v. Bernard Chevrolet, Inc.*, 2000 WL 656660, at *5 (N.D. Ill. Mar. 23, 2000); *see also Allstate*, 2009 WL 3147315, at *2 (dismissing breach of implied warranty claim against Toyota where the vehicle was purchased from a Toyota dealership, not Toyota itself). Rodriguez argues the direct dealing exception applies to his claim and therefore the privity requirement is satisfied. The direct dealing exception to privity "applies when there are direct dealings between the manufacturer and the remote customer." *Elward v. Electrolux Home Prods., Inc.*, 214 F. Supp. 3d 701, 705 (N.D. Ill. 2016). But, as the name suggests, the direct dealing exception applies only where the ultimate purchaser of the product communicated *directly* with the manufacturer. *See Rhodes v. Pharmacal Co. v. Continental Can. Co.*, 219 N.E.2d 726 (Ill. App. Ct. 1966) (holding the buyer could sue the manufacturer where the buyer's employees met with the manufacturer directly to discuss product design). The Illinois Supreme Court has since narrowed *Rhodes*, emphasizing the

7

privity requirement. *See, e.g., Szajna v. General Motors Corp.*, 503 N.E.2d 760, 767 (Ill. 1986) (expressly declining to "abolish the privity requirement in implied-warranty economic-loss cases"); *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029-30 (Ill. 1988) (reiterating the holding in *Szajna*, explaining the buyer only has a cause of action against the immediate seller).

Instructed on the importance of privity in implied-warranty economic-loss cases, courts in this district have applied the direct dealing exception only where the manufacturer has direct contact with the purchaser. *See Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1124 (N.D. Ill. 2019); *see also Redmon v. Whirlpool Corp.*, 2020 WL 9396529, at *5 (N.D. Ill. Apr. 28, 2020) (collecting cases). Rodriguez had no contact with Ford. He had contact with the Hopkins Ford dealership in Elgin, but this is insufficient under the controlling Illinois law. Even if the Court found Rodriguez met his notice requirements, his claims would fail for lack of privity.

## II. Count II: Violation of the ICFA

Rodriguez alleges Ford violated the ICFA when it failed to disclose the wiring harness defect. R. 1 ¶ 53. "To prevail under the ICFA, a party must ultimately show (1) an unfair or deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on or be treated unfairly by the act or practice; and (3) that the deception occurred in the course of conduct involving trade and commerce." *Bartolotta v. Dunkin' Brands*, 2016 WL 7104290, at *5 (N.D. Ill. Dec. 6, 2016). When the ICFA claim is based on fraud, it must satisfy the heightened Rule 9(b) pleading standard and identify the who, what, where, and how of the fraud. *Schiesser v. Ford Motor Co.*,

8

2017 WL 1283499, at *6 (N.D. Ill. Apr. 6, 2017). Importantly, the Illinois Supreme Court has "repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission." *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009). Thus, if "there has been no communication with the plaintiff, there have been no statements or omissions." *Id.*; *see also Darne v. Ford Motor Co.*, 2017 WL 3836586, at *10 (N.D. Ill. Sept. 1, 2017) ("Under the ICFA, an 'omission' is an omission from a communication, rather than a general failure to disclose.").

Here, Rodriguez alleges Ford knew of the defect when Rodriguez purchased the vehicle, and Ford's omission led him to receive "a car that lacked the performance, safety, and quality that Ford represented the vehicle to have, or about which Ford omitted material information regarding the wiring defect." R. 1 ¶ 57. But Rodriguez fails to identify any direct statements or communications from Ford. Rodriguez asks the Court to simply disregard the Illinois Supreme Court's clear instructions in *De Bouse* regarding the requirement of a communication from the defendant as incorrect, but the Court is bound by the holding. *In re Emerald Casino, Inc.*, 867 F.3d 743, 765 (7th Cir. 2017). Courts routinely adhere to the requirement of a communication from the defendant for a claim under the ICFA. *See O'Connor*, 477 F. Supp. 3d at 720 (citing *De Bouse* and dismissing an ICFA claim where the plaintiff "[did] not identify any particular direct statements from Defendant that contain material omissions"); *Guajardo v. Sketchers USA, Inc.*, 2021 WL 4302532, at *3 (C.D. Ill. Sept. 21, 2021) (dismissing a second amended complaint and noting the first complaint was dismissed because the plaintiff failed to allege any direct statements from the

9

defendant which contained material omissions, only alleging "opportunities or locations where [defendant] could have disclosed the alleged defect"). It is possible that such communications exist that support Rodriguez's claim under the ICFA. But he has not pled them here. The motion to dismiss Count II is granted.[1]

### III. Count III: Fraudulent Omission

In Count III, Rodriguez alleges Ford knew of the wiring harness defect and concealed or failed to disclose it to Rodriguez and the putative class. Ford argues Rodriguez has not alleged a duty to disclose.

To state a claim for fraudulent omission, a plaintiff must allege the defendant concealed a material fact which he had a duty to disclose to plaintiff. *Squires-Cannon v. Forest Preserve Dist. Of Cook Cty.*, 897 F.3d 797, 805 (7th Cir. 2018) (citing *Connick*, 675 N.E.2d at 593). The concealment must be more than a "mere passive omission of

---

[1] Rodriguez points to two cases in support of his position that the Court should disregard the requirement for a communication from Ford or find that the sale of the Ford vehicle was such a communication. R. 23, at 12 (citing *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 849-50 (S.D. Ohio 2012) and *Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 868 (N.D. Ill. 2006)). It is true that both cases allowed claims under the ICFA to survive a motion to dismiss, but there are important distinctions. First, *In re Porsche* is "an outlier that was decided by a district court in another circuit." *Guajardo*, 2021 WL 4302532, at *3 (declining to follow *In re Porsche* and noting that *O'Connor*, decided in this district, is more persuasive). While the *De Bouse* Court found that "the mere sale of a prescription medication cannot be a representation which serves as a basis for a consumer fraud claim," *De Bouse*, 922 N.E.2d at 318, the *Porsche* Court suggested that the mere sale of a car can, *see Porsche*, 880 F. Supp. 2d at 850. The Court respectfully does not read the *De Bouse* holding (which expressly requires a communication from the defendant) the same way and declines to create such an exception where no Illinois courts have done so. *See Guajardo*, 2021 WL 4302532, at *4 (reaching the same conclusion). Rodriguez's reliance on *Muehlbauer* is also misplaced. The plaintiff there identified three public communications from the defendant which supported her ICFA claim. *Muehlbauer*, 431 F. Supp. 2d at 867.

facts during a business transaction" and "must have been done 'with the intention to deceive under circumstances creating an opportunity and duty to speak.'" *Elliott Associates, L.P. v. AbbVie, Inc.*, 2017 WL 4547919, at *3 (quoting *Perlman v. Time, Inc.*, 380 N.E.2d 1040, 1044 (Ill. App. Ct. 1978)). In Illinois, a duty to disclose can arise where (1) the plaintiff and defendant are in a fiduciary or confidential relationship; or (2) where the plaintiff places trust and confidence in the defendant, thereby placing the defendant in a position of influence and superiority over the plaintiff. *Connick*, 675 N.E.2d at 593. The second option, the "special trust relationship," must be "extremely similar to that of a fiduciary relationship." *Benson v. Stafford*, 941 N.E.2d 386, 403 (Ill. App. Ct. 2010). Moreover, like claims based in fraud under the ICFA, fraudulent omission claims are subject to the heightened pleading standard under Rule 9(b), requiring them to be plead with particularity. *Squires-Cannon*, 897 F.3d at 805 (citing Fed. R. Civ. P. 9(b)).

In support of imposing a duty to disclose based on a special trust relationship, Rodriguez argues Ford was "in a superior position to know the true state of facts" and "actively concealed the defective nature of the [vehicle's] wiring." R. 1 ¶ 62. Thus, he contends, a special trust relationship existed and Ford had a duty to disclose the defect. R. 23, at 9-10.

The Court in *Van Zeeland v. Rand McNally*, 532 F. Supp. 3d 557 (N.D. Ill. 2021), rejected this argument. The plaintiff there argued the duty to disclose existed where "one party has exclusive knowledge of a product and its defects." *Id.* at 572. In dismissing the plaintiff's claim, the district court relied on the Seventh Circuit's

11

opinion in *Wigod v. Wells Fargo Bank*, 673 F.3d 547 (7th Cir. 2012). The *Wigod* court noted that Illinois state and federal courts "have rarely found a special trust relationship to exist in the absence of a more formal fiduciary one." *Id.* at 571. "In short, the defendant accused of fraudulent concealment must exercise 'overwhelming influence' over the plaintiff." *Id.* (quoting *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 13 (Ill. App. Ct. 2001)). The plaintiff's claim in *Van Zeeland* was dismissed because he failed to allege any fact showing the defendant's overwhelming influence over him or other members of the class, and because the alleged defect was not exclusively known by only the defendant.

Here, Rodriguez's argument is identical to that of the plaintiff in *Van Zeeland*, and the Court agrees with the reasoning presented in *Van Zeeland* and *Wigod*. Rodriguez has not alleged any facts to show Ford's overwhelming influence over him and the rest of the putative class. To be sure, Ford had more knowledge than Rodriguez as to the functionality of its vehicles and their parts. But the fact that Ford had more information than Rodriguez does not show an overwhelming influence. Further, similar to the plaintiff in *Van Zeeland*, the complaints about the wiring harness defect were not *exclusively* known by Ford. Rather, as Rodriguez explains in his complaint, they were maintained on the National Highway Traffic Safety Administration database, which is public. Rodriguez has not sufficiently pled that Ford had a duty to disclose the wiring harness defect based on a special trust relationship. The motion to dismiss Count III is granted.

## Conclusion

For the foregoing reasons, Ford's motion to dismiss, R. 11, is granted and Rodriguez's claims are dismissed without prejudice. If Rodriguez believes he can cure the deficiencies described in this opinion, Rodriguez may not immediately file an amended complaint. Rather, he may file a motion for leave to file an amended complaint. The motion should be accompanied by a redlined proposed amended complaint and a brief of no more than five pages explaining how the amendments cure the deficiencies identified in this opinion. Any such motion must be filed by April 22, 2022.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: March 31, 2022